# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BILLINGS DIVISION

| | |
|---|---|
| PAC RE 5-AT, a protected cell of PACIFIC RE, INC., a Montana corporation,<br><br>Plaintiff,<br><br>vs.<br><br>AMTRUST NORTH AMERICA, INC., a Delaware corporation; and TECHNOLOGY INSURANCE COMPANY, INC., a New Hampshire corporation,<br><br>Defendants-Counterclaim-Plaintiffs,<br><br>vs.<br><br>PACIFIC RE, INC., a Montana corporation,<br><br>Counterclaim-Defendant. | CV-14-131-BLG-CSO<br><br>**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT** |

This declaratory judgment action arises out of a demand for arbitration sent to Pacific Re, Inc. ("Pacific Re") and to Pac Re 5-AT ("Cell 5"), a protected cell of Pacific Re. The demand was sent by Defendants AmTrust North America, Inc. ("AmTrust") and Technology

-1-

Insurance Company, Inc. ("TIC") and is based on alleged breaches of a Captive Reinsurance Agreement.

Now pending are cross motions for summary judgment. *ECF 29, 33*. Having reviewed the parties' arguments and the applicable law, the Court orders as follows.

I. <u>BACKGROUND</u>

Pacific Re is a captive insurance company organized under the laws of the State of Montana. Effective October 1, 2010, Pacific Re and Safebuilt Insurance Services, Inc. ("SIS") entered into a Participation Agreement. *ECF 1-2 at 1.* In the Participation Agreement, Pacific Re agreed to establish a protected cell entitled PacRE 5-AT ("Cell 5") for Safebuilt.

On the same date, AmTrust, on behalf of TIC, and Pacific Re, on behalf of Cell 5, entered into a Captive Reinsurance Agreement ("CRA"). *ECF 1-3*. In the CRA, the parties agree that "[a]ny dispute between the Company (AmTrust) and the Reinsurer (Pacific Re) … shall be submitted to arbitration before a panel of three arbitrators." *ECF 1-3 at 10*.

In September 2014, AmTrust and TIC served on Respondents Pacific Re and Cell 5 a demand for arbitration of a CRA dispute. *ECF*

*1-4*. The arbitration is currently stayed pending the resolution of this action. *ECF 24-4* at 1.

Plaintiff's Complaint herein states two counts. Count I requests a judicial declaration that, under Montana law, the proper party to be named in the Defendants' Demand for Arbitration is only Cell 5, and not also Pacific Re. Count II seeks an injunctive order staying the pending arbitration until Count I is resolved. Because the parties have agreed to stay the arbitration proceeding, Pacific Re and Cell 5 acknowledge that Count II is moot. *ECF 23 at 4.* Defendants' Answer denies the allegations of Count I and asserts a counterclaim against Pacific Re for a judicial declaration that Pacific Re is properly a party to the arbitration.

All parties move for summary judgment. Although the underlying issues in the arbitration may be complex, the issue before this court relatively simple: Is Pac Re a proper party to the arbitration? For the following reasons, the Court concludes that it is a proper party and that summary judgment should issue for the Defendants/Counterclaimants.

## II. PARTIES' ARGUMENTS

Pacific Re and Cell 5 argue that Cell 5 is the only proper party to arbitration of the CRA because Cell 5, as a protected cell, has

segregated assets and liabilities from Pacific Re and the other protected cells of Pacific Re. *ECF 34* at 4– 5. They argue that Defendants contracted only with Cell 5, and that no other cell is referenced in any agreement, and all parties intended to conduct business only with Cell 5. *ECF 34* at 10–11. Essentially, Pacific Re and Cell 5 argue that the statutory language isolates protected cells as their own entities, separate from the other protected cells and from the core of a protected cell company, making Cell 5 the only proper party to the arbitration arising out of the CRA. *ECF 34* at 11–13.

Pacific Re and Cell 5 acknowledge that there is a statutory distinction between incorporated and unincorporated protected cells, but argue that a protected cell, regardless of whether it is incorporated, owns its own assets and liabilities and thus should be considered separately from the protected cell company in order to give meaning to the entire statutory scheme. *Id.*

In response, AmTrust and TIC argue that Pacific Re is a proper party to the arbitration. *ECF* 36 at 8–9. They argue that Cell 5 is a non-existent legal entity, and as a result, Pacific Re is liable for the obligations it incurred in Cell 5's name. *Id.* They argue that because Montana's protected cell statute indicates that a protected cell is not a

separate legal person from the protected cell company, Pacific Re is the proper party to be named in a lawsuit or arbitration. *Id.*

AmTrust and TIC further argue that Pacific Re is bound by the terms of the SIS CRA since it contracted with them on behalf of Cell 5, a non-existent legal entity that lacked capacity to agree to the terms on its own behalf. They argue that Pacific Re accepted and ratified the terms of the CRA through performance of the trust agreements created as part of the CRA. *Id.* at 9. The trust agreements include the Loss Corridor Trust Agreement and the Loss Fund Trust Agreement. *Id.* They argue that because Pacific Re entered the trust agreements on behalf of itself and Cell 5, and because the Grantor is defined as a corporation organized under the laws of Montana, Pacific Re is the only party that could serve as Grantor under the agreements. *Id.* at 10–11.

AmTrust and TIC also argue that Cell 5 is not a valid protected cell and the protected cell statute cannot be relied upon to limit Pacific Re's exposure. *Id.* at 12–15. They argue that the cell did not meet the prerequisites for forming and maintaining a valid protected cell and the objectives of the business model were not achieved. *Id.* at 15.

AmTrust and TIC argue that even though protected cells are treated separately for tax purposes, and have the ability to own assets, the power to sue and be sued was never granted to unincorporated protected cells by the Montana Legislature. *Id.* at 17–19. They argue that the legislature explicitly grants the capacity to sue and be sued, separately from the ability to own assets, as demonstrated with limited liability corporations and cooperative associations. *Id.*

In addition to the arguments listed above, AmTrust and TIC, in their motion for summary judgment, argue that Pacific Re and Cell 5 are estopped from denying that the CRA created enforceable obligations as to Pacific Re. *ECF 30* at 27–29. They argue equitable estoppel exists because: (1) Defendants intended to contract with an existing legal entity and create enforceable obligations; (2) they were led to believe Pacific Re would reinsure Defendants' risk; and (3) the trust agreements were executed by Pacific Re. *Id.* at 28–29. They argue these reasons demonstrate that Pacific Re understood the obligations of the CRA to be those of Pacific Re and as a result, Defendants opened themselves up to substantial risks that were meant to be reinsured by Pacific Re. *Id.*

Pacific Re and Cell 5 respond that Cell 5 is a properly formed protected cell under Montana law. *Id.* at 9. They argue that Defendants are attempting to expand the narrow issue in this case — which is whether, under Montana law, Cell 5 is the proper party to be named in the arbitration. *Id.* at 11.

## III. SUMMARY JUDGMENT STANDARD

The court must grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings, discovery responses, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue of fact exists.

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Cross-motions for summary judgment are each examined under the same standards. *Fair Housing Council of Riverside County, Inc. v. Riverside Two,* 249 F.3d 1132, 1136 (9th Cir. 2001).

## IV. DISCUSSION

To determine whether Pacific Re is a proper party to an arbitration regarding the CRA, the Court first examines whether Cell 5 has the capacity to sue or be sued.

The capacity to sue or be sued is determined under the laws of the state where the court is located. F. R. Civ. P 17(b)(3). In 2003, Montana enacted statutory provisions enabling the creation of a protected cell captive insurance company ("PCC"). MCA § 33–28–301 *et al.* Protected cell company legislation is a relatively recent creation in offshore jurisdictions such as Guernsey, Bermuda and the Cayman Islands, and in onshore jurisdictions in many states. *See generally* Nigel Feetham & Grant Jones, *Protected Cell Companies: A Guide to Their Implementation and Use* (2d ed. Spiramus Press 2010).

In the Montana legislation, a PCC may create one or more protected cells and a protected cell may be incorporated or

unincorporated. Each cell must have separate and identifiable assets and liabilities. Specifically:

> A protected cell captive insurance company shall establish administrative and accounting procedures necessary to properly identify the one or more protected cells of the protected cell captive insurance company and the protected cell assets and protected cell liabilities attributable to the protected cells. The directors of a protected cell captive insurance company shall keep protected cell assets and protected cell liabilities:
>
> (A) separate and separately identifiable from the assets and liabilities of the protected cell captive insurance company's general account; and
>
> (B) attributable to one protected cell separate and separately identifiable from protected cell assets and protected cell liabilities attributable to other protected cells.

Mont. Code Ann. § 33-28-301(2)(e). Additionally, and importantly for the present dispute, the legislature highlighted the legal status of a protected cell, stating:

> The creation of a protected cell does not create, with respect to that protected cell, a legal person separate from the protected cell captive insurance company unless the protected cell is an incorporated cell. Amounts attributed to a protected cell under this chapter, including assets transferred to a protected cell account, are owned by the protected cell….

§ 33–28–301(c). The legislation also provides that "[t]he assets of a protected cell may not be chargeable with liabilities arising from

-9-

any other insurance business of the protected cell captive insurance company." § 33-28-301(4).

The issue here is one of first impression under Montana law. The Court is guided by the Montana Supreme Court's holding that statutory construction is a holistic endeavor and must account for the statute's text, language, structure, and object. *State v. Heath*, 90 P.3d 426, 432 (Mont. 2004). In construing a statute, a court must "ascertain and declare what is in terms of substance contained therein, not to insert what has been omitted or to omit what has been inserted." MCA § 1–2–101. Where possible, the statute should be construed to give effect to all provisions. *Id.* Any inquiry must begin with the words of the statute, and legislative intent is first to be ascertained from the plain meaning of the words used. *Heath*, 90 P.3d at 288.

The statutory construction issue arises here because a cell is not a separate *de jure* legal entity, but has many *de facto* aspects of a legal identity. It is clear that the liabilities and assets of a protected cell are segregated from the other cells and from the PCC, but it also is clear that a protected cell does not have a separate legal identity. Each cell, in essence, operates as its own separate entity but remains part of the larger PCC. Though the statute does not contemplate that the assets of

a protected cell will be used to satisfy the liabilities of any other cell, the cells are not entirely independent from the PCC. § 33–28–301.

Pacific Re's argument that the statutory construction indicates that a protected cell should be segregated and isolated from the core and any other protected cells in the PCC misses the mark in this lawsuit because a protected cell is not a separate legal person. Without a separate legal identity, and absent a statutory grant to the contrary, a protected cell does not have the capacity to sue and be sued independent of the larger PCC. The statutory language is clear, and the Court need not look beyond the plain meaning. Although a protected cell has many attributes of independence from the PCC, it remains a part of the PCC, which has the capacity to act on behalf of the protected cell, as in this instance Pacific Re acted on behalf of Cell 5 in agreements at issue.

This interpretation gives meaning to the entire statute because the arbitration may consider and apply the statutory attributes of the protected cell's independence. But Pacific Re, as the PCC, entered into contracts at issue both on its own and on behalf of the protected cell. It is properly before the arbitration tribunal and will appropriately be bound by the results of the arbitration.

Based on these conclusions, the Court need not reach the remaining arguments presented by the parties.

## V. CONCLUSION

Based on the foregoing, IT IS ORDERED that Plaintiff's and Counterclaim Defendant's Motion for Summary Judgment (*ECF 33*) is DENIED and Defendants/Counterclaimants' Motion for Summary Judgment (*ECF 29*) is GRANTED to the extent that this Court declares that Pacific Re, Inc. is properly a party named in the Defendants' Demand for Arbitration commenced pursuant to the SIS Captive Reinsurance Agreement.

The Clerk shall enter judgment accordingly. Each party must bear its own costs and fees.

DATED this 13th day of May, 2015.

/s/ *Carolyn S. Ostby*
United States Magistrate Judge